IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

CHERYL STEWARD,

    Petitioner,

v.                                                      No. 13-1325

UNITED STATES OF AMERICA,

    Respondent.

_____

ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255,
DENYING CERTIFICATE OF APPEALABILITY
CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL
_____

*INTRODUCTION*

Before the Court is the *pro se* 28 U.S.C. § 2255 motion of the Petitioner, Cheryl Steward, to vacate, set aside or correct her sentence (the "Petition") filed December 9, 2013. (D.E. 1.) Steward, Bureau of Prisons register number 23909-076, is currently an inmate at the Federal Correctional Institution Aliceville in Aliceville, Alabama.[1] For the reasons articulated herein, the Petition is DENIED.

*PROCEDURAL HISTORY*

On March 15, 2010, a federal grand jury, in Case No. 1:10-10029, returned an indictment against Petitioner and her husband, Ricky Lee Steward III,[2] in connection with the December 10,

---

[1] At the time the Petition was filed, she was incarcerated at Federal Medical Center Carswell in Fort Worth, Texas.

[2] While the inmate's husband's name is spelled "Stewart" in the indictments, it appears from the Petition that "Steward" is the correct spelling for his last name. Throughout this opinion, in order to avoid confusion, the Petitioner will sometimes be referred to as "Steward" and her husband as "Mr. Steward."

2009, attempted robbery of a Save-A-Lot store in Henderson, Tennessee, during the course of which Mr. Steward shot and killed Dennis Cagle, a Henderson Police Department captain who, along with other officers, responded to a 911 call. Petitioner was charged with aiding and abetting in the attempted robbery and in the use, carrying, brandishing and discharging of a firearm in connection therewith, in violation of 18 U.S.C. §§ 1951 and 924(c)(1), respectively. (Case No. 1:10-cr-10029, D.E. 1.) In a superceding indictment issued on April 16, 2012, the inmate was charged with the counts contained in the original indictment (Counts 1 and 2); Mr. Steward's possession and receipt, from approximately April 6 to December 10, 2009, of a firearm (a Charter Arms, Model Bulldog Pug, .44 special caliber revolver) while having been a felon, in violation of 18 U.S.C. § 922(g), (Count 4); and, during the same time period, loaning and transferring a firearm to a convicted felon and unlawful user of a controlled substance, in violation of 18 U.S.C. §§ 922(d) and 924(a)(2) (Counts 6 and 7). (*Id.*, D.E. 147.) She was also charged with, on or about April 6, 2009, falsely representing to the weapons dealer from which she purchased the firearm that it was for herself rather than a convicted felon, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2) (Count 5). (*Id.*)

Steward was represented by retained counsel, John Elbert of Pennsylvania Criminal Defense, P.C. in Philadelphia, Pennsylvania, and Joseph Howell of Jackson, Tennessee, throughout her criminal case. On September 11, 2012, she pleaded guilty to Counts 1, 2 and 5 (*id.*. D.E. 170), pursuant to a plea agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure,[3] in which the parties agreed to a sentence of 240 months and dismissal of

---

[3]The rule provides in pertinent part as follows:

> An attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement. The court must not participate in these discussions. If the defendant pleads guilty . . . to either a charged offense or a lesser or related

2

Counts 3 and 4 of the superceding indictment (*id.*, D.E. 171). Steward was sentenced on November 30, 2012, to 120 months as to Counts 1 and 5, to run concurrently, and 120 months on Count 2, to run consecutively to the sentence imposed as to Counts 1 and 5, for a total of 240 months. Judgment was entered December 3, 2012. (*Id.,* D.E. 189.) She did not appeal.

Prior to delving into the merits of the Petition, the Court must first address the Respondent's challenge to its timeliness. Section 2255 provides that a one-year statute of limitations applies to actions *thereunder*, to commence, for purposes of this case, on "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). Generally, "convictions become final upon conclusion of direct review." *United States v. Sferrazza*, ___ F. App'x ___, 2016 WL 1445347, at *7 (6th Cir. Apr. 13, 2016) (quoting *Sanchez-Castellano v. United States*, 358 F.3d 424, 426 (6th Cir. 2004)). If, as is the case here, there is no direct appeal to the Sixth Circuit Court of Appeals, "the judgment becomes final upon the expiration of the period in which the defendant could have appealed to the court of appeals, even when no notice of appeal was filed." *Id.* (quoting *Sanchez-Castellano,* 358 F.3d at 427); *see also United States v. Alexander*, ___ F. App'x ___, 2016 WL 640489, at *2 n.1 (6th Cir. Feb. 18, 2016) ("A conviction becomes final when the time for filing a direct appeal elapses[.]"), *petition for cert. filed,* (U.S. June 21, 2016) (No. 15-9838). In a criminal case, a defendant's notice of appeal must be filed in the district court within fourteen days of the entry of judgment. Fed. R. App. P. 4(b)(1)(A)(i). Here, as the judgment was entered on December 3, 2012, Steward had until

---

offense, the plea agreement may specify that an attorney for the government will . . . agree that a specific sentence . . . is the appropriate disposition of the case . . . (such a recommendation or request binds the court once the court accepts the plea agreement).

Fed. R. Crim. P. 11(c)(1)(C).

December 17, 2012, to file a notice of appeal. The statutory period for filing a § 2255 motion commenced on that date. Thus, the Petition, filed December 9, 2013, was timely.

The Respondent also argues that Petitioner's waiver of her rights pursuant to § 2255 as contained in the plea agreement foreclosed her ability to launch the instant collateral attack, citing *Davila v. United States*, 258 F.3d 448 (6th Cir. 2001). Steward assented in the agreement to "waive her right to challenge her conviction and sentence, and the manner in which the sentence was determined, and . . . her attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under 28, United States Code, § 2255." (Case No. 1:10-cr-10029, D.E. 171 ¶ 7). In *Davila*, the § 2255 petitioner, an attorney, specifically agreed "not to contest his sentence in any post conviction proceeding, including but not limited to a proceeding under § 2255." *Davila*, 258 F.3d at 448, 452. The judge explained to Davila from the bench that the plea agreement's provision meant that he could not bring a § 2255 action based on ineffective assistance of counsel. *Id.* The petitioner indicated that he understood and agreed with the plea agreement's provisions. *Id.* In that situation, based on the waiver, the Sixth Circuit affirmed the lower court's denial of his subsequent § 2255 ineffective assistance of counsel claim. *Id.* at 452-53.

The Court agrees that the inmate in this case waived the right to challenge her conviction and sentence, as well as the manner in which the sentence was determined, and the Petition is denied on waiver grounds to the extent she has done so. However, the Court parts company with the Government with respect to a collateral attack based on ineffective assistance of counsel. The wording of the plea agreement indicates that Steward agreed only to waive her right to initiate a § 2255 claim arising from her counsel's failure or refusal to file a notice of appeal. Thus, the waiver does not appear to be as broad as that in *Davila*. As the habeas claim before the

Court is not based on Petitioner's lawyers' failure or refusal to appeal her conviction, the Government's argument does not persuade the Court to deny the Petition on grounds that she waived her right to collaterally attack for ineffective assistance. The Court at this point turns to the merits of the Petition.

## THE PETITION

The stated grounds for the Petition are as follows:

1. Attorney did not negotiate and fully explain her plea stipulations and was not present during critical hearings when he should have been.

2. [Petitioner] was not in the proper state of mind to make an intelligent act both pre and during trial, therefore her mental state imposes mitigating and extraordinary circumstances that were not fully utilized at sentencing.

(D.E. 1 at PageID 4, 6.)

## LEGAL STANDARD

Section 2255(a) provides that

> [a] prisoner in custody under sentence of a court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, . . . or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). In order to succeed on a motion under the statute, a petitioner must show "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Shaw v. United States*, 604 F. App'x 473, 476 (6th Cir.) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)), *cert. denied,* 135 S. Ct. 2914 (U.S. June 29, 2015). "Relief is warranted only where a petitioner has shown a fundamental defect which inherently results in a

complete miscarriage of justice." *Miller v. United States*, 561 F. App'x 485, 489 (6th Cir. 2014) (internal quotation marks omitted).

*ANALYSIS OF PETITIONER'S CLAIMS*

The Sixth Amendment guarantees the effective assistance of counsel to criminal defendants. *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984). In order to prevail on an ineffective assistance claim, a petitioner must demonstrate (1) that her attorney's performance was deficient and (2) that the deficient performance prejudiced the defense. *Lee v. United States*, ___ F.3d ___, 2016 WL 3190079, at *1 (6th Cir. June 8, 2016). "To establish deficient performance, a petitioner must show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Ewing v. United States,* ___ F. App'x ___, 2016 WL 3182704, at *4 (6th Cir. June 7, 2016) (citing *Strickland*, 466 U.S. at 687) (alterations & internal quotation marks omitted). "Unless the petitioner demonstrates both deficient performance and prejudice, it cannot be said that the conviction or sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Goward v. United States*, 569 F. App'x 408, 412 (6th Cir. 2014) (alterations & internal quotation marks omitted). When assessing a challenge on ineffective assistance grounds, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Moreland v. Robinson*, 813 F.3d 315, 328 (6th Cir. 2016) (citing *Bell v. Cone*, 535 U.S. 685, 702 (2002)) (internal quotation marks omitted), *petition for cert. filed* (U.S. Apr. 12, 2016) (No. 15-8902).

Prejudice is shown where there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Delaine v. United*

*States*, 605 F. App'x 468, 471 (6th Cir. 2015) (citing *Strickland*, 466 U.S. at 694). To establish prejudice in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Cadavid-Yepes v. United States*, 635 F. App'x 291, 298 (6th Cir. 2016) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)).

"The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Smith v. Jenkins*, 609 F. App'x 285, 292 (6th Cir. 2015) (quoting *Harrington v. Richter,* 562 U.S. 86, 105 (2011)) (internal quotation marks omitted). A petitioner claiming ineffective assistance of counsel faces a heavy burden of proof. *Pough v. United States*, 442 F.3d 959, 966 (6th Cir. 2006); *Blair v. United States*, No. 1:15-cv-229, 2016 WL 3014670, at *4 (E.D. Tenn. May 24, 2016).

As noted above, Steward argued in the Petition that her counsel did not properly negotiate the plea or adequately explain its terms with her. She added:

> [She] was in a co-dependent state of mind and was acting out of fear which had been implanted into her decision making process. Her attorney being another authoritative figure triggered her to act in a manner in which he directed. Therefore when her attorney told her to accept the plea or receive a life sentence, she was flashed back to do what she has always known to do, which was to comply with his directions. Not knowing that if she did not actually participate in the crimes directly that she could be given (2) consecutive sentences.

(D.E. 1 at PageID 4-5.) The inmate stated in an amendment to the Petition that she was a victim of domestic abuse by Mr. Steward; that her lawyers counseled her, while in a distressed state of mind, to "lie on herself"; and that she was coerced into accepting the plea agreement. (D.E. 9.)

7

According to their affidavits, Elbert and/or Howell were present at every stage of the prosecution, including all plea negotiations.[4] They filed numerous motions, including a request for a psychiatric examination (Case No. 1:10-cr-10029, D.E. 70), which was granted (*id.*, D.E. 71), and a motion for modification or reduction of her sentence pursuant to 18 U.S.C. § 3553 (*id.*, D.E. 196), which was denied (*id.*, D.E. 199). Counsel further submitted that, after extensive and lengthy negotiations with the Government and a thorough investigation of the facts of the case and the defenses available to her, it was their advice that Steward accept the plea offer. Her attorneys averred that, though she was informed of the possibility of a life sentence if the case went to trial, they never instructed the inmate that she must serve a life sentence in the event she rejected the offer. Counsel stated that, after explaining the available defenses and the possibility of success under each option, as well as the implications of the plea agreement, to Petitioner and her family on numerous occasions, their client concluded that a plea was her best option. In her reply to the Government's response, Steward does not dispute her attorneys' statements, relating only that she pleaded guilty out of fear.

The record offers no support for Petitioner's claims. At her change of plea hearing, the inmate's counsel advised the Court that she wished to plead guilty to Counts 1, 2 and 5 of the superceding indictment and she confirmed her lawyer's statement was correct. Steward testified under oath that she had taken no medications or drugs that would affect her understanding of the proceedings, that she had sufficient opportunity to discuss her plea with her attorneys, that she was satisfied with their advice and representation, and that she was neither threatened nor

---

[4]On February 16, 2011, Elbert sought permission of the Court to be absent from a hearing set for March 4, 2011, after he suffered a concussion in a fall on the ice in Sewell, New Jersey, and was advised by his neurologist not to fly on March 3, 2011, as counsel had intended in order to attend the hearing. (Case No. 1:10-cr-10029, D.E. 106.) The motion was granted (*id.*, D.E. 107) and, according to the minutes of the March 4, 2011, hearing, Howell was present on Steward's behalf (*id.*, D.E. 108).

8

coerced into pleading guilty. She assured the Court she understood that, by pleading guilty, she was foregoing her right to a trial and to appeal her conviction. At the time of the hearing, Petitioner had seen a copy of the indictment and had discussed it with her counsel. The counts to which Steward agreed to plead guilty were read aloud to her. After the reading of Count 1, the Court advised Petitioner that the possible penalty was not more than twenty years in prison and she responded that she understood. On the reading of Count 2, the Court explained that the potential penalty could be a mandatory minimum sentence of not less than ten years consecutive or in addition to any other sentence she might receive. Again, Steward communicated her understanding. Count 5 was read and the inmate advised of the potential penalty of not more than ten years. Petitioner stated that she understood the potential penalty.

The plea agreement was presented to the Court and Steward acknowledged that she had placed her signature thereon and that she entered into the agreement freely, knowingly and voluntarily. The parties agreed that the sentence should be 240 months imprisonment, with the understanding that the Court may accept or reject the agreement. The remaining counts of the superseding indictment would be dismissed at sentencing. Following the Government's summary of the plea agreement, the inmate expressed her understanding that, if she proceeded to sentencing without the agreement, her sentence could be greater than that anticipated in the agreement.

> The Government provided the Court with the following summary of the facts of the case:
>
> [I]n January of 2009, [C]heryl Freeman Steward ordered from Gander Mountain, here in Jackson, Tennessee – Gander Mountain is a licensed [f]ederal firearm dealer. She ordered this Charter Arms Bulldog Pug, [.]44 special revolver in January. She picked the gun up on April 6, 2009.
>
> She bought the firearm knowing that Ricky Lee Stewar[d] could not buy it because he was a convicted felon; and therefore, she falsely filled out the ATF form listed in Count 5 of the indictment.

9

Then the gun was taken back on October 12th to get it repaired. And Ms. Freeman Steward and Ricky Stewar[d] both went to Gander Mountain. And this was on the videotape when she took it. They are also on videotape when she picked it up on November 21, 2009. And then on December 10th of 2009, Ricky Lee Stewar[d], III, and [C]heryl Freeman Steward aided and abetted each other in the robbery of the Save-A-Lot grocery store there in Henderson, Tennessee, in that [C]heryl Steward drove Ricky Stewar[d] to the grocery store there on 129 Whitley Avenue in Henderson, Tennessee.

The Save-A-Lot is a business engaged in interstate commerce. We would have put on witnesses from the Save-A-Lot to show that it's a chain, and that it also bought materials or items that had traveled in interstate commerce.

So once Ms. Steward took Ricky Stewar[d] to the grocery store, she waited some distance away from the grocery store. And then the – while Ricky Stewar[d] was robbing the grocery store with this Bulldog Pug [.]44, entering into the store, and this is all on videotape, was Captain Dennis Cagle with the Henderson Police Department, and also Don Purvis with the Chester County Sheriff's Department.

And as they entered the store, shots were exchanged. Captain Cagle was fatally wounded during the exchange of gunfire.[5] Ricky Stewar[d] was injured during the gunfight. He was apprehended. But when the gunfight started, [C]heryl Steward left from that area. And when she left, she left without her headlights on. And two individuals that were there present in the road got her license plate and identified the vehicle that she was driving.

So [C]heryl Steward aided and abetted Ricky Stewar[d] in this attempt to rob the Save-A-Lot grocery store on December 10th, 2009. And in doing so, aided and abetted him with the knowing use, carrying, brandishing and discharging of this Pug [.]44 firearm.

(*Id.*, D.E. 197 at PageID 535-37.) After the summary was provided to the Court, the following exchange occurred between the undersigned and the Government:

THE COURT: Was one aspect I wanted to ask you, Mr. Ivy. You mentioned regarding Count 5. Was there going to be proof that – you mentioned that she had provided false information to Gander Mountain. Was there going to be proof that, in fact, the gun had actually been purchased for the use by Mr. Stewar[d]? Is that information –

MR. IVY: For Mr. Stewar[d].

---

[5]Cagle succumbed to his injuries three days after the shooting.

10

| | | |
|---|---|---|
| THE COURT: | | For Mr. Stewar[d]. |
| MR. IVY: | | Yes, Your Honor. We have Gander Mountain personnel that we have interviewed that would have testified that she came in. They could identify her. And then they could identify Mr. Stewar[d] as coming in with her later on. But on the day that she purchased it, it was for Ricky Stewar[d]. |

(*Id.* at PageID 537.) Petitioner agreed that the narrative of the incident as set out by the Government was substantially correct and that the United States had sufficient facts to prove its case against her. She offered no additional facts or modifications of those presented by the prosecution for the Court's consideration. The Court then asked her again if she was pleading guilty to Counts 1, 2 and 5 and if she was in fact guilty of the offenses charged in those counts. Steward responded in the affirmative.

The Presentence Report (the "PSR") detailed the tumultuous history of the Stewards' relationship, as well as her issues with her father. According to the report, the latter, a career soldier in the United States Army, frequently physically abused her mother in her presence. Mr. Steward, to whom she was married in 2007, verbally, mentally and physically abused her. On November 16, 2009, he held a knife to her neck and threatened to kill her, an incident for which he was arrested and charged with felony aggravated assault in Chester County, Tennessee General Sessions Court. Steward conceded during an interview that, while she was frequently abused and fearful of her husband, she was also easily manipulated, influenced and coerced by him.

During a forensic examination conducted at the request of her attorneys on May 14 and June 28 of 2010 by psychologist Robert W. Kennon, Ph.D., she characterized anxiety and self-esteem issues from which she suffered as secondary to her past dysfunctional relationships with men. The inmate described a prior seven-year relationship with another man as "abusive." She

again explained that her husband was controlling, abusive and manipulative and that his behavior had become erratic following civilian service he performed in Iraq. Petitioner reported verbal and physical abuse, as well as her placement of a restraining order against him based on her feelings of fear and threat.

According to Dr. Kennon's report, Steward's treatment for mental health issues began in 2002 for longstanding major depressive disorder related to marital problems and fearfulness regarding her past relationships, including that with her father. In addition to depression, the psychologist diagnosed Dependent Personality Disorder.

The PSR recommended a three-point reduction for acceptance of responsibility, as well as an additional three-point reduction based on her minor role in the offense. The report noted that, if the plea agreement was accepted by the Court, it "would have the effect of significantly reducing [Steward's] sentencing exposure as to counts one and five, from a total restricted guideline term of 360 months (240 months on count one and 120 months, consecutive, on count five) to a term of 120 months, plus a consecutive statutory term of 120 months, consecutive, for the count two conviction." (PSR ¶ 78.) In identifying factors warranting departure, the report noted that "the defendant has a documented history of significant problems with and prior treatment for major depression. She also has a significant history of problems related to a diagnosis of Dependent Personality Disorder." (*Id.* ¶ 89.) A forensic evaluation conducted by Bureau of Prisons forensic psychologist Dr. Christine Anthony[6] revealed that, in her opinion, Steward was not, at the time of the offense, "suffering from a mental disease or defect which

---

[6]While the date of Dr. Anthony's evaluation is unclear from the record, the Government filed its notice and summary thereof on August 20, 2012. (*See* Case No. 1:10-cv-10029, D.E. 167.)

would render her unable to appreciate the nature, quality, and wrongfulness of her alleged offense behavior." (Case No. 1:10-cr-10029, D.E. 167.)

At the sentencing hearing, held some three years after the attempted robbery, the Petitioner advised the Court that she had discussed the PSR with her counsel and did not offer any objections to the facts contained therein. In her statement to the Court, she apologized to Cagle's family and expressed sorrow for their pain and loss. She thanked her relatives for their support and encouragement and Attorney Howell for assisting in her representation in light of Attorney Elbert's "many complications in trying to represent" her. (*Id.*, D.E. 201 at PageID 588.) Steward also apologized to the Court and to her family members. The inmate mentioned nothing about her role in the offenses on and leading up to the December 10, 2009, incident or her relationship with her husband.

While is it somewhat unclear from the docket what the nature of Elbert's "complications" were, there is no evidence that her counsel, whether singly or in tandem, performed in a constitutionally deficient manner. Petitioner has offered nothing to suggest that her attorneys neglected to present to the Court mitigating information relative to the abuse, manipulation and coercion she suffered at the hands of Mr. Steward. This evidence was before the Court and the inmate has identified no additional mitigating proof her attorneys failed to provide. Indeed, it was her counsel who sought and obtained a psychiatric examination of the Petitioner from which much of the mitigating information emanated. At sentencing, the Court took into consideration her mental, emotional and abuse issues, but recognized that she chose not to remove herself from the abusive situation with her husband, resulting in the circumstances in which she found herself.

Steward consulted with her counsel regarding the PSR and pointed out no factual errors contained therein. She never gave the Court any indication that she was unhappy with her attorneys. Nor did she object to the terms of the plea agreement or the sentence.

Under the terms of the agreement, the Government dismissed two of the charges against the Petitioner. The Court accepted the recommendation of the Probation Officer with respect to reductions for her minor role in the crime and acceptance of responsibility, and accepted the plea agreement. There is no evidence that her lawyers could have received a better outcome for her after what had become a long, protracted negotiation process.

Prejudice has also not been shown. There is nothing to suggest the Government could not have proven the charges against the Petitioner. The record reflects overwhelming evidence of guilt on the counts to which she pleaded guilty. Her admitted actions, though they did not include actually pulling the trigger of the gun she purchased from Gander Mountain, assisted in and provided the means by which Cagle lost his life in a crime that shook the small community of Henderson. Nonetheless, under the terms of the plea agreement negotiated with the Government, her lawyers obtained for her a sentence far below what it could have been. The inmate has made no showing that, but for her attorneys' alleged errors, there is a reasonable probability she would have insisted on going to trial, where the Government would have sought a sentence of life imprisonment

Based on the foregoing, the Court finds the Petitioner has failed to establish the elements of a claim of ineffective assistance of counsel under *Strickland. See Roush v. United States*, No. 2:13-CV-869, 2015 WL 4135302, at *4-6 (S.D. Ohio July 8, 2015) (finding that abused wife of co-defendant husband did not demonstrate ineffective assistance where mitigating circumstances of her relationship with her spouse were before the court and there was no additional information

counsel could have provided, where the government possessed overwhelming evidence of her guilt, and counsel's negotiated plea left her with a much lesser sentence than she would likely have received otherwise) (adopting report & recommendation).

*CONCLUSION*

Because the issues presented by Steward are without merit, they are DISMISSED. The Clerk of Court is DIRECTED to enter judgment for the United States.

*APPEAL ISSUES*

Twenty-eight U.S.C. § 2253 requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate. The COA must also indicate "which specific issue or issues satisfy" the required showing. 28 U.S.C. § 2253(c)(3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted). A COA does not require a showing that the appeal will be successful. *Id.* at 337. Courts, however, should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773-74 (6th Cir. 2005) (per curiam).

In this case, for the reasons previously stated, the issues raised by the Petitioner lack substantive merit and, therefore, she cannot present a question of some substance about which reasonable jurists could differ. The Court therefore DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Rule 24(a) of the Federal Rules of Appellate Procedure. *Id.* at 952. The Rule provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, the Rule also provides that, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file her motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons it denies a COA, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED.[1]

IT IS SO ORDERED this 6th day of July 2016.

                              s/ J. DANIEL BREEN
                              CHIEF UNITED STATES DISTRICT JUDGE

---

[1] If Petitioner files a notice of appeal, she must also pay the full appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.